UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MATHEW B. TULLY,

                        Plaintiff,

        -against-

COUNTY OF NASSAU,

                        Defendant.
------------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
11-CV-2633 (ADS)(ARL)

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★   FEB 1 4 2012   ★

LONG ISLAND OFFICE

**APPEARANCES:**

**Tully Rinckey PLLC**
*Attorneys for the plaintiff*
441 New Karner Road
Albany, New York 12205
        By: Steven L. Herrick, Esq., Of Counsel

**John Ciampoli, Nassau County Attorney**
*Attorneys for the defendant*
One West Street
Mineola, New York 11501
        By: Assistant Nassau County Attorney Barbara E. Van Riper

**SPATT, District Judge.**

        The plaintiff, Mathew B. Tully ("Tully" or "the Plaintiff"), commenced this action

against the defendant, County of Nassau ("Nassau County" or "the Defendant"), alleging that the

Defendant discriminated against him and engaged in prohibited employment actions based on his

military service in violation the Uniformed Services Employment and Reemployment Rights Act

of 1994 ("USERRA"), 38 U.S.C. § 4301 *et seq.*, and New York Military Law §§ 242 and 243.

Presently before the Court is the Defendant's motion to dismiss the Plaintiff's claims pursuant to

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim upon

which relief can be granted.  In addition, the Plaintiff has filed a cross-motion to strike the

1

Defendant's motion to dismiss as untimely and improper. For the reasons set forth below, the

Court denies the Plaintiff's cross-motion to strike and grants the Defendant's motion to dismiss.

## I.  BACKGROUND

Unless otherwise stated, the following facts are drawn from the Plaintiff's complaint and

are construed in the light most favorable to the Plaintiff.

On or about June 1, 1993, the Nassau County Department of Parks, Recreation and

Museums ("the Parks Department") hired Tully as a park ranger on a seasonal basis. Soon

thereafter, on or about September 17, 1993, Tully was promoted to a part-time park ranger

position on a year-round basis. Throughout the course of his employment with the Parks

Department, Tully was enlisted in the United States Army National Guard, and remains in that

service to this day. In October of 1995, Tully was called into active service while in the employ

of the Parks Department. Before he entered active duty, Tully informed Nassau County of his

military commitment. After Tully left to fulfill his military obligations, Nassau County informed

the New York State and Local Retirement System that Tully was no longer a county employee.

Subsequently, on or about November 9, 1995, Nassau County terminated Tully's employment.

Tully fulfilled his military commitment by serving on active duty beginning in October of

1995 and concluding in April of 1998, whereupon he was honorably discharged. Upon his return

to civilian life, Tully informed Nassau County that he intended to return to his position with the

Parks Department. On or about March 13, 1998, Tully spoke with the Director of Safety and

Security for the Parks Department, Russell Furchak ("Furchak"), about returning to work at the

Parks Department. According to Tully, following his conversation with Furchak, Nassau County

agreed to reinstate Tully in his former position and provided that his reinstatement was to be

effective retroactively to the date of his termination, which was either October or November of

2

1995. However, Tully alleges that Nassau County never recalculated the pension credits or accumulated leave time, and failed to determine whether Tully would have been in line for promotional opportunities.

On March 26, 1998, Tully received a work schedule from the Parks Department that was effective April 3, 1998. He was also issued park ranger uniforms. In addition, on March 31, 1998, Tully was issued a gas card. However, before he could commence working at the Parks Department, on April 1, 1998, Furchak informed Tully that he was not qualified to return to work as a park ranger for Nassau County without first qualifying as a New York State Security Officer. Tully contends that he attempted to contact Furchak on several occasions from April through July of 1998 regarding this qualification, but that Furchak failed to respond. As a result, on or about July 17, 1998, independently and without instruction from Nassau County or the Parks Department, Tully applied for a New York State Security Officer License. Tully asserts that his pending application for the requisite license rendered him eligible to return to work as a park ranger.

That same day, July 17, 1998, Tully  informed Furchak of his pending application and "his eagerness to return to work". (Compl., ¶ 21.) Nevertheless, Tully states that on July 31, 1998, Nassau County terminated his employment. On behalf of Nassau County, Furchak attempted to inform Tully of his termination by a letter dated July 27, 1998. However, this letter was returned unopened. Furchak, acting on behalf of Nassau County, sent another letter  to Tully on August 4, 1998, notifying him that he was no longer on the payroll as of July 31, 1998. This letter was also returned unopened.

On August 7, 1998, Tully sent a letter to Furchak inquiring about when he could return to work. Subsequently, on or about August 19, 1998, Furchak sought the assistance of the Nassau

3

County District Attorney to compel Tully to return the uniforms and equipment he was issued. On September 28, 1998, Tully sent a letter to Furchak and Furchak's superior seeking to enforce his rights under the Uniformed Services Employment and Reemployment Rights Act of 1994.

According to Tully, who had not read the letters from Furchak dated July 27, 1998 or August 4, 1998, he learned of his termination from a prospective employer, who informed him that when he contacted Nassau County, an unknown Nassau County employee stated that Tully had been "dismissed with cause and a referral was made for criminal prosecution". (Compl., ¶ 28.) In the complaint, Tully cites to two memoranda supporting his position that he was terminated following his return from active duty. The first is a memorandum from the Parks Department Captain Richard George Breusch ("Breusch") to Furchak dated September 30, 1998, in which Breusch "acknowledged that Tully had numerous contacts with Nassau County in an effort to return to employment with the Parks [Department]". (Compl., ¶ 29.) The second, is a memorandum written by Furchak on October 2, 1998, in which Furchak "admitted" that "Tully's employment was terminated by [Nassau County] (he was tying up a budget slot)". (Compl., ¶ 30 (alteration in original).)

On June 1, 2011, Tully filed the instant complaint against Nassau County asserting twelve causes of action for alleged violations of USERRA and the New York Military Law. Specifically, in the first through seventh causes of action, Tully asserts claims under USERRA (the "USERRA claims"), alleging that: (1) Nassau County discriminated against him in violation of 38 U.S.C. § 4311(a) by terminating his employment based on his military service in 1995 and failing to pay or reimburse him for the fees associated with becoming a Park Ranger and Security Officer in 1995 and 1998; (2) Nassau County violated 38 U.S.C. §§ 4312 and 4313 by failing to restore his employment, to restore him to his previous position, or to make reasonable efforts to

4

qualify him for his former position upon his return from service in April 1998; (3) assuming his employment was restored in April 1998, Nassau County violated 38 U.S.C. § 4316 by failing to retain him in its employ for a year following his reinstatement; and (4) Nassau County violated 38 U.S.C. § 4318 by denying him the benefit of continued participation in the New York State Retirement System, a pension benefit plan, upon his reemployment in April 1998.

In causes of actions eight through twelve, Tully asserts claims under the New York Military Law (the "New York Military Law claims"), alleging that: (1) Nassau County discriminated against him in violation of New York Military Law § 242 by denying to him a leave of absence while he was on active duty; denying reemployment, retention in employment, promotion, and benefits of employment upon his return; and denying paid time off while he was on active duty; and (2) Nassau County discriminated against him in violation of New York Military Law § 243 because his November 1995 termination denied to him the opportunity to make contributions to his pension and other rights and privileges.

On August 3, 2011, pursuant to Rule 12(b)(6), the Defendant filed the instant motion to dismiss the complaint in its entirety for failure to state a claim. The Defendant contends that all of the Plaintiff's claims are barred by the statute of limitations, or, in the alternative, under the doctrine of laches. In addition, to the extent the Court dismisses the Plaintiff's USERRA claims, the Defendant seeks the dismissal of the New York Military Law claims for lack of subject matter jurisdiction. In response, the Plaintiff filed a cross-motion to strike the Defendant's motion to dismiss on the ground that it was filed one day late. Furthermore, the Plaintiff denies that any of his claims are time-barred, and asserts that whether a claim is time-barred by the statute of limitations or the doctrine of laches are inappropriate issues for resolution on a motion to dismiss.

5

The Court first addresses the Plaintiff's cross-motion to strike, and then addresses the Defendant's motion with respect to the USERRA claims and the New York Military Law claims separately.

## II. MOTION TO STRIKE

The Plaintiff filed the complaint in this action on June 6, 2011, and effectuated service on the Defendant on July 11, 2011. Pursuant to Federal Rule of Civil Procedure 12(a) ("Rule 12(a)"), the Defendant was required to serve a responsive pleading or file the instant motion to dismiss "within 21 days after being served with the summons and complaint". Fed. R. Civ. P. 12(a)(1)(A). Thus, pursuant to Rule 12(a), the Defendant's motion was due on August 1, 2011. However, due to a purported miscalculation error by counsel, the Defendant filed the instant motion on August 2, 2011, one day late.

Based on this one day delay, the Plaintiff moves to strike the Defendant's motion and requests an order from the Court requiring the Defendant to answer the complaint. In response, the Defendant states that the motion was filed one day late "as a result of miscounting by counsel" and requests that the late filing of the complaint be "deemed a request for an extension of time to respond to the complaint pursuant to [Federal Rule of Civil Procedure 6]". (Def.'s Opp./Reply Br. at 1.) The Plaintiff did not submit a reply opposing the Defendant's request. Thus, the Court grants the Defendant's unopposed request for the Court to consider the motion to dismiss as also requesting a motion for extension of time to file the motion.

Federal Rule of Civil Procedure 6(b) ("Rule 6(b)") provides that a court may grant an extension of time "after the time has expired if the party failed to act because of excusable neglect". Fed. R. Civ. P. 6(b)(1)(B). While the Court recognizes the importance of complying with deadlines, because the Plaintiff submitted arguments in opposition to the motion to dismiss,

6

the Court does not see any way in which the Plaintiff was prejudiced by the Defendant's one day delay. Furthermore, to grant the Plaintiff's motion would serve no discernable purpose other than to delay the resolution of this case and waste the resources of the parties and the Court. Thus, in the exercise of its discretion, the Court grants the Defendant's belated request for an extension of time and denies the Plaintiff's motion to strike the Defendant's motion to dismiss.

### III. MOTION TO DISMISS

#### A. Legal Standard for a Motion to Dismiss

Under the now well-established Twombly standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two principles. Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' " Id. at 72 (quoting Iqbal, 129 S. Ct. at 1949). " 'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' " Id. (quoting Iqbal, 129 S. Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." Iqbal, 129 S. Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiffs' favor. Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); In re NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2d Cir. 2007). Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief" will it grant dismissal pursuant to Rule 12(b)(6). Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993). The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

**B.  As to the Plaintiff's USERRA Claims**

In 1994, Congress enacted USERRA to replace the Veterans' Reemployment Rights Act of 1974 ("the VRRA") in order to "clarify, simplify, and, where necessary, strengthen the existing veterans' employment and reemployment rights provisions." Gummo v. Village of Depew, 75 F.3d 98, 105 (2d Cir. 1996) (quoting H.R. Rep. No. 103-65(I), at 2451 (1993)); Woodard v. New York Health and Hosp. Corp., 554 F. Supp. 2d 329, 347 (E.D.N.Y. 2008), aff'd in part, 350 F. App'x 586 (2d Cir. 2009); Warren v. IBM Corp., 358 F. Supp. 2d 301, 309 (S.D.N.Y. 2005). The stated purpose of the statute is to:  (1) "encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service"; (2) minimize disruption in the lives of both service members and their employers; and (3) "prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a).

As with its predecessor statute, at the time it was enacted, USERRA made no reference to an applicable statute of limitations. In November of 1998, USERRA was amended to explicitly provide that state statutes of limitations were not applicable to USERRA claims. See 38 U.S.C. § 4323(i) (1998) ("section 4323(i)") ("No State statute of limitations shall apply to any proceeding under this chapter."). However, from the time of its enactment until October 10, 2008, USERRA was silent with regard to any applicable federal statute of limitations. As a result, many courts applied the four-year "catch-all" statute of limitations set forth in 28 U.S.C. § 1658 to USERRA claims.

On October 10, 2008, Congress enacted the Veterans' Benefits Improvement Act, Pub.L. No. 110-389, 122 Stat. 4145 ("VBIA"), which, in relevant part, amends USERRA by removing the reference to the state statute of limitations in section 4323(i) and replaces it with a provision stating that no limitations period applies to USERRA claims. See 38 U.S.C. § 4327(b) ("section 4327(b)") (stating that "there shall be no limit on the period for filing the Complaint or claim under USERRA").

The main dispute between the parties is whether the Plaintiff's USERRA claims are time-barred by the statute of limitations. As an initial matter, the Court disagrees with the Plaintiff's contention that the resolution of this issue is not proper on a motion to dismiss. Where, as here, the facts necessary to determine whether a claim is time-barred are clear from the face of the complaint, a court can dismiss claims that are time-barred on a motion to dismiss. The only relevant fact to the Court's analysis is when the Plaintiff's USERRA claims accrued. According to the Defendant, the Plaintiff's USERRA claims accrued, at the latest, on September 28, 1998, when the Plaintiff sent a letter to the Defendant asserting his rights under USERRA. In his opposition, the Plaintiff does not dispute that September 28, 1998 is the latest accrual date of his

9

claims. Although arguably many of the Plaintiff's claims accrued prior to September 28, 1998, because it ultimately has no impact on the Court's conclusion, the Court accepts, for purposes of this motion, that September 28, 1998 is the accrual date of the Plaintiff's USERRA claims.

The Defendant does not dispute that the current version of USERRA does not impose a statute of limitations on USERRA claims. Rather, the Defendant contends that the Plaintiff's claim is nevertheless time-barred because it arose and expired under the pre-VBIA version of the statute, which the Defendant argues subjected claims to the four-year "catch-all" statute of limitations in 28 U.S.C. § 1658. According to the Defendant, because the current version of USERRA does not retroactively revive claims that expired prior to its enactment, the Plaintiff's USERRA claims are time-barred and should be dismissed.

Thus, to resolve whether the Plaintiff's claims are time-barred, the Court must determine: (1) whether the four-year "catch-all" statute of limitations applied to USERRA claims that accrued prior to the enactment of the VBIA, and, if so, (2) whether section 4327(b) retroactively applies to revive otherwise time-barred USERRA claims.

### 1. As to the Statute of Limitations Applicable to Pre-VBIA USERRA Claims

In 1990, four years prior to the enactment of the USERRA, Congress enacted 28 U.S.C. § 1658 ("section 1658"), which provides that "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a). The United States Supreme Court addressed the reach of section 1658 in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004), holding that "a cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990—and therefore is governed by § 1658's 4-year statute of limitations—if the plaintiff's claim against the defendant

10

was made possible by a post-1990 enactment." 541 U.S. at 382, 124 S. Ct. 1836. The Court

further clarified that, in addition to newly enacted legislation, "a post-1990 enactment" can

include a post-1990 amendment to a law that was instituted prior to section 1658 because

"Congress routinely creates new rights of action by amending existing statutes . . .". Id. at 381,

124 S. Ct. 1836. "What matters is the substantive effect of an enactment—the creation of new

rights of action and corresponding liabilities—not the format in which it appears in the [United

States] Code." Id.

   As previously stated, USERRA was not newly enacted legislation, but rather an

amendment to the pre-existing VRRA. Although USERRA amended the VRRA in several

respects, relevant to the instant analysis was the addition of a provision allowing for liquidated

damages. See 38 U.S.C. § 4323(c)(1)(A)(iii) (1998); see also 38 U.S.C. § 4323(d)(1)(A) (2008).

By creating the right to liquidated damages, "Congress converted what had been an equitable

claim into a legal one, which brought along the corresponding right to a jury trial". Middleton v.

City of Chicago, 578 F.3d 655, 659 (7th Cir. 2009) (collecting cases).

   In the complaint, the Plaintiff includes a jury demand and explicitly seeks liquidated

damages for his USERRA claims pursuant to 38 U.S.C. § 4323(d)(1)(A). As a result, the

Plaintiff's claims were "'made possible by' and 'necessarily depend' on USERRA, meaning

[they] arose under a cause of action enacted after § 1658". Id. at 660 (quoting Jones, 541 U.S. at

382, 384, 124 S. Ct. 1836); see also Risner v. Haines, No. 06-CV-1953, 2009 WL 4280734, at *6

(N.D. Ohio Nov. 24, 2009) ("In this instance, Mr. Risner's rights and liabilities have been

affected by the enactment of USERRA, as it has allowed him to broaden his claim to include a

trial by jury and liquidated damages, while also lowering the burden of evidence necessary to

prove his claim. The rights and liabilities substantively affected—i.e. created—by the passage of

11

USERRA are precisely the type contemplated by the Supreme Court in <u>Jones</u> as falling within the ambit of the four-year statute of limitations in section 1658."); <u>Nino v. Haynes Intern., Inc.,</u> No. 05-CV-0602, 2005 WL 4889258, at *4 (S.D. Ind. Aug. 19, 2005) (same).

Furthermore, having passed USERRA four years after the enactment of section 1658, Congress was aware that "except otherwise provided" in the statute, the four-year "catch-all" statute of limitations would apply. Nevertheless, USERRA is silent with regard to a federal statute of limitations. See <u>Middleton</u>, 578 F.3d at 665 (prior to the enactment of the VBIA, USERRA claims were subject to the four-year limitations period in section 1658 because "Congress enacted USERRA nearly four years after enacting § 1658, and it did not include in USERRA a statute of limitations or a provision that no limitations period should apply"). As a result, the Court agrees with those courts that have found that USERRA claims arising before the enactment of the VBIA in October 2008 were subject to the four-year limitations period in section 1658. <u>Id.</u>; <u>Risner</u>, 2009 WL 4280734, at *6; <u>Wagner v. Novartis Pharms.Corp.</u>, 565 F. Supp. 2d 940, 945 (E.D. Tenn. 2008) <u>Aull v. McKeon-Grano Assocs., Inc.</u>, No. 06-CV-2752, 2007 WL 655484, at *4 (D.N.J. Feb. 26, 2007); <u>Nino</u>, 2005 WL 4889258, at *3–5; <u>O'Neil v. Putnam Retail Mgmt, LLP</u>, 407 F. Supp. 2d 310, 313–16 (D. Mass. 2005).

Finally, the Court notes that the case relied upon by the Plaintiff for the proposition that "USERRA specifically prohibits the application of a statute of limitations", (Pl.'s Opp. at 5), not only does not compel a different result, but supports the Court's conclusion that section 1658 is applicable to pre-VBIA USERRA claims. In the case cited by the Plaintiff, <u>Potts v. Howard University Hospital</u>, 598 F. Supp. 2d 36 (D.D.C. 2009), the court held that because the pre-VBIA version of USERRA expressly prohibited the application of a *state* statute of limitations, the plaintiff's USERRA claims were not time-barred by D.C.'s three-year statute of limitations. 598

12

F. Supp. 2d at 39–40. On reconsideration, the court addressed the applicability of section 1658, and, consistent with this Court's ruling, held that "under the version of the statute that was in effect when the plaintiff initiated this suit in April 2008, his claim was subject to the four-year "catch-all" federal statute of limitations set forth in 28 U.S.C. § 1658". Potts v. Howard University Hospital, 623 F. Supp. 2d 68, 72 (D.D.C. 2009).

Accordingly, under the four-year "catch-all" statute of limitations set forth in section 1658, the Plaintiff's claim pursuant to USERRA expired, at the latest, on September 28, 2002.

### 2. As to the Retroactivity of Section 4327(b)

The Supreme Court has noted that "the presumption against retroactive legislation is deeply rooted in our jurisprudence." Landgraf v. USI Film Prods., 511 U.S. 244, 265, 114 S. Ct. 1483, 1497, 128 L. Ed. 2d 229 (1994). This "time-honored presumption" should be applied "unless Congress has clearly manifested its intent to the contrary." Hughes Aircraft Co. v. United States ex rel. Schumer, 520 U.S. 939, 946, 117 S. Ct. 1871, 1876, 138 L. Ed. 2d 135 (1997) (quoting Landgraf, 511 U.S. at 268, 114 S. Ct. at 1498–99). In Landgraf, the Supreme Court articulated a two-part test for determining whether a statute has retroactive effect. First, the court should "determine whether Congress has expressly prescribed the statute's proper reach". 511 U.S. at 280, 114 S. Ct. 1483. If so, the court's inquiry ends here. However, "when . . . the statute contains no such express command", the second prong of the analysis requires the court to "determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed". Id. If the application of the statute would result in a retroactive effect, "then, in keeping with [the] 'traditional presumption' against retroactivity, [the court] presume[s] that the statute does not apply to that conduct."

Martin v. Hadix, 527 U.S. 343, 352, 119 S. Ct. 1998, 144 L. Ed. 2d 347 (1999) (quoting Landgraf, 511 U.S. at 280, 114 S. Ct. 1483).

As an initial matter, because the Plaintiff's USERRA claims expired six years before the VBIA was enacted, section 4327(b) is only applicable to the Plaintiff's claims if the statute retroactively revives otherwise time-barred or "expired" claims. This is distinguishable from the question of whether section 4327(b) applies retroactively to claims that were still within the four-year limitations period, and were therefore "live" when section 4327(b) became effective. See Goodman v. City of New York, Nos. 10-CV-5236, 11-CV-3432, 2011 WL 4469513, *6–8 (S.D.N.Y. Sept. 26, 2011) (holding that a USERRA claim that accrued on January 27, 2007 was not time-barred despite the fact that the complaint was not filed until May 19, 2011—four months after the expiration of the four-year statute of limitations—because the claim was "live" at the time of section 4327(b)'s enactment); Andritzky v. Concordia Univ. Chicago, No. 09-CV-6633, 2010 WL 1474582, at *4–5 (N.D. Ill. Apr. 8, 2010) (holding that the plaintiff's claims arising more than four-years before the enactment of the VBIA were time-barred, but not the plaintiff's USERRA claim that accrued within the four-years before the VBIA). Because the Plaintiff's claim was not "live" when section 4327(b) became effective—having expired under section 1658 on September 28, 2002—the Court only addresses whether section 4327(b) resurrects expired claims.

With respect to the first prong of the Landgraf analysis, the plain language of section 4327(b) states:

> (b) Inapplicability of statutes of limitations.--If any person seeks to file a complaint or claim with the Secretary, the Merit Systems Protection Board, or a Federal or State court under this chapter alleging a violation of this chapter, there shall be no limit on the period for filing the complaint or claim.

14

38 U.S.C. § 4327(b).  While the statute prospectively makes reference to "filing the complaint",

it lacks any language expressly or unambiguously directing its retroactive application.  In <u>In re</u>

<u>Enterprise Mortgage Acceptance Co.</u>, 391 F.3d 401 (2d Cir. 2004), the Second Circuit examined

the retroactive effect of a revised statute of limitations for securities claims contained in Section

804(b) of the Sarbanes-Oxley Act.  In that case, the relevant language of the statute provided that

the revised statute of limitations "shall apply to all proceedings . . . that are commenced on or

after the date of enactment of this Act".  In holding that the plain language of Section 804(b)

does not unambiguously revive expired claims, the Second Circuit stated:

> Although Section 804(b) is perhaps most naturally read as
> applying to any proceeding that is commenced after Sarbanes-
> Oxley's July 30, 2002, enactment, the statute contains none of the
> unambiguous language that the Supreme Court has asserted would
> amount to an express retroactivity command, <u>see</u> <u>Landgraf</u>, 511
> U.S. at 255–56 & n. 8, 114 S. Ct. 1483 (stating that the language
> "all proceedings pending on or commenced after the date of
> enactment" amounted to "an explicit retroactivity command")
> (emphasis added); <u>Martin v. Hadix</u>, 527 U.S. 343, 354, 119 S. Ct.
> 1998, 144 L. Ed. 2d 347 (1999) (describing the sentence, "'[t]he
> new provisions shall apply to all proceedings pending on or
> commenced after the date of enactment'" as "unambiguously
> address[ing] the temporal reach of the statute") (quoting <u>Landgraf</u>,
> 511 U.S. at 260, 114 S. Ct. 1483); nor that which Congress has
> used in previous statutes to indicate its intent to revive time-barred
> claims, <u>see, e.g.</u>, Riegle-Neal Interstate Banking and Branching
> Efficiency Act of 1994, Pub.L. No. 103-328, § 201(a), 108 Stat.
> 2338, 2368 (codified at 12 U.S.C. § 1821(d)(14)(C)(i)) (amending
> the Act to provide that "the Corporation may bring an action ... on
> such claim without regard to the expiration of the statute of
> limitation applicable under State law"); Higher Education
> Technical Amendments of 1991, Pub.L. No. 102-026, § 3, 105
> Stat. 123, 124 (codified at 20 U.S.C. § 1091a(a)(2)) (eliminating
> statute of limitations with regard to recovering on defaulted student
> loans by stating "no limitation shall terminate the period within
> which suit may be filed").

391 F.3d at 406–07.  Here, section 4327(b) is arguably even more ambiguous than Section

804(b), insofar as it fails to make any reference to its applicability in any proceedings.

Ultimately, the language in section 4327(b) falls far short of constituting an "unambiguous directive" or "express command" that it retroactively revives time-barred claims. Landgraf, 511 U.S. at 263, 280, 114 S. Ct. 1483; see Middleton v. City of Chicago, 578 F.3d 655, 662–63 (7th Cir. 2009) ("Congress was aware that for § 4327(b) to have retroactive effect, it needed to say so expressly, and the absence of any such express language in the text indicates that Congress chose not to do so."); Risner v. Haines, No. 06-CV-1953, 2009 WL 4280734, at *7 (N.D. Ohio Nov. 24, 2009) ("The VBIA makes no mention of the application of § 4327(b) as retroactive and, as such, the absence of an express indication from Congress is fatal to Mr. Risner's argument.").

Having found that Congress has not "expressly prescribed" that section 4327(b) is retroactive to expired USERRA claims, the Court turns to the second prong of the Landgraf analysis, namely, whether applying the statute retroactively would have a retroactive effect. "A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment." Landgraf, 511 U.S. at 269, 114 S. Ct. 1483. Rather, "[t]he inquiry into whether a statute operates retroactively demands a commonsense, functional judgment about 'whether the new provision attaches new legal consequences to events completed before its enactment.'" Martin v. Hadix, 527 U.S. at 358, 119 S. Ct. 1998 (quoting Landgraf, 511 U.S. at 270, 114 S. Ct. 1483). "This judgment should be informed and guided by 'familiar considerations of fair notice, reasonable reliance, and settled expectations.'" Id. (quoting Landgraf, 511 U.S. at 270, 114 S. Ct. 1483); see also St. Cyr v. I.N.S., 229 F.3d 406, 418 (2d Cir. 2000), aff'd, 533 U.S. 289, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001) (holding that "an impermissible retroactive effect" occurs when the retroactive application of a statute "would upset settled expectations and change the legal effect of prior conduct").

Here, the Plaintiff's USERRA claims, at the latest, accrued approximately thirteen years before he filed the complaint. Pursuant to the then applicable four-year limitations period under section 1658, the expiration of the Plaintiff's USERRA claims occurred approximately six years before Congress enacted the VBIA and section 4327(b) became effective. The "settled expectations" of the Defendant for the nine years preceding the filing of the complaint in this action was that it was no longer subject to liability. By lengthening the applicable limitations period and requiring the Defendant to defend an action that was previously time-barred, applying section 4327(b) would have a retroactive effect because it "puts [the Defendant] back at risk at a point when [the Defendant] reasonably believe[d] [it was] immune from litigation". Enterprise, 391 F.3d at 410.

Furthermore, if the Plaintiff had commenced the action anytime between September 28, 2002 and October 1, 2008, the Defendant would have been able to successfully raise the statute of limitations as an affirmative defense. See Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 597 F.3d 84, 88 n. 4 (2d Cir. 2010) ("A statute of limitations creates an affirmative defense where plaintiff failed to bring suit within a specified period of time after his cause of action accrued . . . ."). Thus, applying section 4327(b) to resurrect the Plaintiff's previously time-barred claims has an "impermissible retroactive effect" because it strips the Defendant "of a complete affirmative defense [it] previously possessed and may have reasonably relied upon". Enterprise, 391 F.3d at 410 (citations omitted); cf. Goodman, 2011 WL 4469513, *6–8 (distinguishing cases involving live and expired claims and holding that "applying the VBIA to [the plaintiff's] [live] USERRA claim does not impair any of Defendants' rights, because, at the time that the VBIA was enacted, Defendants could not have asserted the statute of limitations defense").

17

In conclusion, the Court finds that the Plaintiff's USERRA claims were subject to a four-year statute of limitations, resulting in their expiration on September 28, 2002. In the absence of an "express command" of retroactivity by Congress, and the presence of impermissible retroactive effects, the Court finds no basis to disregard the "traditional presumption against retroactivity" and revive the Plaintiff's expired USERRA claims. See Middleton, 578 F.3d at 663 ("Middleton asks us to apply § 4327(b) to revive a time-barred claim, but he has presented nothing to overcome our presumption against doing so. Congress said nothing about retroactivity, and under the general rule [that laws enlarging the statute of limitations traditionally are applied prospectively], we cannot apply § 4327(b) to his thirteen-year-old USERRA claim."); Moore v. United Air Lines, Inc., No. 10-CV-2100, 2011 WL 2144629, at *6–7 (D. Colo. May 31, 2011) (holding that the VBIA does not revive USERRA claims that were time-barred before its enactment); Andritzky, 2010 WL 1474582, at *4–5 (same); Risner, 2009 WL 4280734, at *7 (same).

Thus, the Plaintiff's first through seventh causes of action alleging violations of USERRA are time-barred and the Defendant's motion to dismiss all of those causes of action is granted.

**C. As to the Plaintiff's New York Military Law Claims**

The remaining causes of action in the complaint, assert state law claims for alleged violations of the New York Military Law §§ 242 and 243. The Defendant contends that if the Court dismisses the Plaintiff's USERRA claims, the Court should also dismiss the Plaintiff's New York Military Law claims for lack of subject matter jurisdiction. The Court agrees.

A court "may decline to exercise supplemental jurisdiction over a [pendent state law] claim" if the court "has dismissed all [federal] claims over which it has original jurisdiction." 28

18

U.S.C. § 1367(c)(3). "Once [a court's] discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity in deciding whether to exercise jurisdiction." Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (internal citation and quotation marks omitted).

Having dismissed all of Plaintiff's federal claims, and given the early stage of this litigation, the Court declines to exercise supplemental jurisdiction over the Plaintiff's state law claims. Accordingly, the Defendant's motion to dismiss the Plaintiff's eighth through twelfth causes of action asserting violations of the New York Military Law is granted. These causes of action are dismissed without prejudice.

### III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Plaintiff's motion to strike the Defendant's Rule 12(b)(6) motion to dismiss is denied, and it is further

**ORDERED**, that the Defendant's Rule 12(b)(6) motion to dismiss the complaint in its entirety is granted, and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case.

**SO ORDERED.**
Dated: Central Islip, New York
February 14, 2012

_/s/ Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge

19